978 F.2d 1258
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Philip Donald HILL, Plaintiff-Appellant,
v.
UNIVERSITY OF KENTUCKY, Emery A. Wilson, M.D., and Richard
W. Schwartz, M.D., Defendants-Appellees.
 No. 92-5158.
 United States Court of Appeals, Sixth Circuit.
 Nov. 4, 1992.
 
 Before KENNEDY AND MILBURN, Circuit Judges, and POTTER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff Philip Donald Hill ("Hill") appeals the order of the District Court granting summary judgment in favor of defendants University of Kentucky ("medical school"); Emery A. Wilson, M.D. ("Dean Wilson"); and Richard W. Schwartz, M.D. ("Dr. Schwartz"). Plaintiff contends that his receipt of a failing grade in his surgery clerkship course constituted a violation of his substantive and procedural due process rights.
 
 I.
 
 2
 On August 15, 1983, Hill began his medical school classes at the University of Kentucky College of Medicine. He attended three days of classes before becoming ill and subsequently missed several weeks of classes. Hill then petitioned the Student Progress and Promotion Committee ("SPPC") for a reduced caseload to stretch his first year courses over a two-year period. This request was denied, and Hill was given a one-year's medical leave of absence.
 
 
 3
 In August of 1984, Hill resumed classwork as a first-year medical student and attended classes until the first semester final examinations. At this point, Hill became ill and was unable to take his exams, receiving incompletes in those courses. In February, 1985, Hill was granted a second one-year's medical leave of absence. At this time, Hill was not in good academic standing.
 
 
 4
 In August of 1985, Hill again enrolled as a first-year medical student. On November 11, 1985, Hill was involved in an automobile accident causing him to miss four weeks of classes. He dropped out of Biochemistry and received a failing grade. Despite missing one month of classes due to the auto accident and receiving a failing grade in Biochemistry, Hill completed his first year of medical school with a grade point average of 2.45 on a 4.0 scale.
 
 
 5
 Hill began his second year of medical school in August of 1986. Approximately one month later, Hill was severely injured (assaulted and stabbed) while attempting to apprehend a person breaking into his car. Hill was granted a third medical leave of absence for the time period between September 5 and October 1, 1986. Hill was rehospitalized on October 10, 1986 for bleeding ulcers and requested another medical leave of absence. The SPPC recommended that Hill's request be denied. On December 11, 1986, the dean of the medical school at that time, Robin Powell, M.D., sent Hill a letter approving his request for a medical leave of absence. At the end of the letter Dean Powell warned, "This is the final opportunity the University of Kentucky College of Medicine will provide you." Joint App. at A-133.
 
 
 6
 Between the autumn of 1987 and the spring of 1988, Hill completed his second year of medical school without incident. In July of 1988, Hill took Part I of the National Board of Medical Examiners test, and was one of 16 students in the medical school who failed to pass the exam. In the fall of 1988, Hill took the exam a second time and was one of eight students in the medical school who failed the exam a second time. Thereafter, these eight students, including Hill, were each granted a one-year leave of absence to prepare for and retake the exam. On his third attempt, Hill passed the exam.
 
 
 7
 In July of 1989, Hill began his third year of medical school. In November of that year, Hill began a twelve-week surgery clerkship course. The clerkship coordinator was the defendant Dr. Schwartz. The method for determining the grades in the course was stated in the course syllabus. The syllabus also contained the following statement: "The Department of Surgery reserves the right to assign an unsatisfactory or failing grade for the entire clerkship if the student performs in an unsatisfactory manner in terms of professional behavior, interactions with patients, or on the examinations."
 
 
 8
 During the course of his surgery clerkship course, several incidents regarding Hill's performance were brought to the attention of Dr. Schwartz, including the following: Hill had six absences of which only two were excused; in choosing patients to examine, Hill chose two with the same disease even though the syllabus stated that students were not to select patients with similar diseases unless no other patients were available; and, Hill changed his on-call night without informing the other students in his rotation group. On February 12, 1990, eleven weeks into the course, Dr. Schwartz informed Hill that he had failed the course. Dr. Schwartz gave Hill a failing grade in the course based on "several episodes of intellectual dishonesty, unsatisfactory ratings from both the students and myself and a deficit in performance in areas such as self-responsibility for learning, relationships with peers and faculty, and attendance." Joint App. at A-176. Dr. Schwartz sent a letter to Hill detailing the reasons for the failing grade. Hill appealed to Schwartz to reconsider the grade and in a letter to Hill, dated July 16, 1990, Dr. Schwartz responded, "I reevaluated your grade in depth and still feel you deserve the grade you received." Joint App. at A-389.
 
 
 9
 Hill then appealed his grade to Dean Wilson. On August 29, 1990, Dean Wilson sent a letter to Hill upholding the assignment of the failing grade. The SPPC recommended that Hill be dismissed from the medical school based upon his previous and current performance. Wilson upheld the recommendation by letter dated August 31, 1990, saying "The Student Progress and Promotion Committee has reviewed your third year performance and provided me with their recommendation concerning your academic standing. I have reviewed the information from the various departments and concur with their recommendation to dismiss you from enrollment in the College of Medicine." Joint App. at A-384. Hill then appealed to the University ombudsman, Dr. Gretchen LaGodna, who determined that Hill's grade, when computed on a strictly numerical basis in accordance with the factors listed in the course syllabus, was equivalent to a "B."
 
 
 10
 On January 14, 1991, the University of Kentucky Appeals Board met to consider Hill's appeal of his surgery grade.[1] The Board consisted of five faculty members and three full-time students. Hill was represented by counsel at the hearing and was given the opportunity to present evidence and cross-examine witnesses. The Appeals Board stated their decision as follows:
 
 
 11
 We unanimously find that Don Hill's grade in SUR-831 should stand.... We believe that Dr. Schwartz made "a fair and just academic evaluation" of Mr. Hill's unprofessional behavior.
 
 
 12
 Thereafter, Dean Wilson reinstated the earlier decision to dismiss Hill from medical school. Hill then provided a written appeal to Wilson for reconsideration of his dismissal. Before making his final decision regarding Hill's dismissal, Dean Wilson discussed the situation with selected faculty, students and the SPPC. During this meeting Dean Wilson reviewed Hill's performance over the entire seven and one half years Hill was associated with the medical school. The dean then reaffirmed the decision to dismiss Hill from the medical school.
 
 
 13
 On May 13, 1991, Hill filed this action in the Fayette Circuit Court in Lexington, Kentucky, alleging breach of contract and arbitrary governmental action and federal claims under 42 U.S.C. § 1983 for violation of due process. The defendants thereafter sought removal to the United States District Court for the Eastern District of Kentucky. The defendants then filed a motion for summary judgment which was granted by the District Court. The District Court found that the decision to dismiss Hill from the medical school rested upon the academic judgment of the defendants and the court should not substitute its own judgment of Hill's potential ability as a medical doctor in the absence of a showing of arbitrary or gross unreasonableness. For the foregoing reasons, we AFFIRM.
 
 II.
 
 14
 This Court reviews the grant of a motion for summary judgment de novo. Brooks v. American Broadcasting Cos., 932 F.2d 495 (6th Cir.1991). Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The inquiry is whether there is sufficient evidence supporting a factual dispute that a judge or jury is required to "resolve the parties differing versions of the truth at trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288-89 (1968)). While the facts as to the review of plaintiff's grade and the decision to terminate him are undisputed, plaintiff contends that defendants were not entitled to summary judgment as a matter of law.
 
 
 15
 Like the District Court, we need not consider whether plaintiff has established the existence of a property interest in his medical school career, because even assuming the existence of such an interest, plaintiff has been accorded at least as much due process as the Fourteenth Amendment requires.
 
 
 16
 In two factually analogous cases, Board of Curators, University of Missouri v. Horowitz, 435 U.S. 78 (1978), and Regents of the University of Michigan v. Ewing, 474 U.S. 214 (1985), the Supreme Court assumed, without deciding, that federal courts can review an academic decision of a public educational institution under a substantive due process standard. Id. In Ewing, the Court held that, assuming the existence of a constitutionally protected property right in continued enrollment in medical school, the question to be answered in deciding a substantive due process claim is whether the University acted arbitrarily in dismissing the student. The Court established the standard of review for federal judges by cautioning that:
 
 
 17
 When judges are asked to review the substance of a genuinely academic decision, ... they should show great respect for the faculty's professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.
 
 
 18
 Id. at 225 (footnote omitted).
 
 
 19
 The record supports the District Court finding that it was eminently apparent that defendant Schwartz's decision to assign plaintiff a failing grade was not arbitrary or such a substantial departure from accepted academic norms as to demonstrate that Dr. Schwartz did not actually exercise professional judgment. Among the factors cited by Dr. Schwartz upon which he relied in making his decision, and which we find persuasive, were the six absences with only two being excused; eighteen unsatisfactory peer evaluations; "virtual absence" in attending operating room procedures during the first ten weeks of the class; switching the on-call night without informing the other members of his rotation group; and the repeated use of identical material in patient write-ups.
 
 
 20
 In addition, after receiving the failing grade, Hill requested and was granted a reconsideration of his grade by Dr. Schwartz. Hill then requested and was granted a review of his grade by Dean Wilson. Hill appealed the grade to the University Appeals Board which found that Dr. Schwartz made a fair and just evaluation. At this hearing, Hill was represented by counsel and had an opportunity to present evidence and cross examine witnesses concerning the circumstances surrounding his failing grade. As to Hill's dismissal from medical school, the District Court found that the SPPC voted unanimously to recommend Hill's dismissal based upon his previous and current performance, and this decision was upheld by Dean Wilson.
 
 
 21
 Hill's academic and clinical performance were examined at length and determined to be unsatisfactory. Similar to the Horowitz[2] case, the decision to dismiss Hill rested on the academic judgment of school officials that "[he] did not have the necessary clinical ability to perform adequately as a medical doctor and was making insufficient progress toward that goal." Horowitz, 435 U.S. at 89-90. Therefore, the defendants' decision to give plaintiff a failing grade, and subsequently to dismiss him was made "conscientiously and with careful deliberation." Ewing, 474 U.S. at 214. We find that it was in no way arbitrary or capricious.
 
 III.
 
 22
 Plaintiff also argues that the process by which he was dismissed from the medical school constitutes a denial of his right to procedural due process. In Horowitz, the Supreme Court discussed the distinction that the state and federal courts have recognized between decisions to suspend or dismiss a student for disciplinary purposes (for which a hearing is required) and similar actions taken for academic reasons. The Court stated that this difference calls for less stringent procedural requirements in the case of an academic dismissal and went on to conclude that:
 
 
 23
 Like the decision of an individual professor as to the proper grade for a student in his course, the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking.
 
 
 24
 Horowitz, 435 U.S. at 90. Thus, in the case of dismissals because of lack of academic qualifications, the Supreme Court has held that procedural due process may require nothing more than prior notice.
 
 
 25
 The Supreme Court went on to hold that due process is satisfied in the case of an academic dismissal if the school fully informed the student of the faculty's dissatisfaction with his progress, as well as the dangerous consequences this posed to his continued enrollment; and, if the ultimate decision to dismiss the student was careful and deliberate. Id. at 85. Applying this test to the facts of this case, we find that Hill was afforded adequate procedural due process.
 
 
 26
 Hill was informed by Dr. Schwartz that he was failing the class. The record indicates that Hill had prior notice of his likely failing grade, yet missed another class after being informed of his precarious status. Plaintiff should also have known the "dangerous consequences" this posed to his enrollment because of the letter he received from the dean on December 11, 1986, warning him that the medical leave of absence was the final chance the medical school would give him. As to the final element of the Horowitz test, it is clear that the ultimate decision to dismiss Hill was careful and deliberate. The SPPC recommended the dismissal after learning that this third-year medical student, with a 7 1/2 year history of problems, had failed another course. The dean of the medical school upheld the dismissal. After Hill requested the dean to reconsider, the dean conferred with faculty, students and the SPPC before reaffirming his decision. The District Court found that the faculty and staff of the medical school went to extraordinary lengths to accommodate Hill through approximately eight trying years. The evidence clearly establishes that Mr. Hill received adequate procedural due process throughout the appeal of his failing surgical clerkship grade and resultant dismissal.
 
 IV.
 
 27
 Hill further argues that defendants' decision to give him a failing grade in the surgery clerkship course was a breach of the University's implied covenant not to arbitrarily expel him. However, even assuming that plaintiff's enrollment in medical school created a contract with the following two implied conditions: that Hill would not be arbitrarily expelled and that he would submit to reasonable rules and regulations, it has already been established that Hill's expulsion was not arbitrary, but had occurred only after great efforts at other solutions had failed.
 
 V.
 
 28
 Finally, since we affirm the District Court's grant of summary judgment for the defendants, we find it unnecessary to address the sovereign and qualified immunity issues.
 
 
 29
 For the aforementioned reasons, we AFFIRM.
 
 
 
 *
 The Honorable John W. Potter, United States District Court for the Northern District of Ohio, sitting by designation
 
 
 [1]
 Pursuant to University rules, Hill was permitted to continue enrollment in medical school classes not involving patient care during the pendency of his appeal to the University Appeals Board
 
 
 [2]
 Horowitz involved a medical student who was dismissed during her final year of medical school for failure to meet academic standards. Horowitz' progress was evaluated several times by the school's Council of Evaluation. She was allowed to advance to her final year on a probationary basis and, following further faculty dissatisfaction with her performance, the Council recommended she be dropped. The Coordinating Committee and the dean approved this decision